UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD HARTMAN,                    :
                                    :
        Plaintiff                   :    No. 4:CV-04-0209
                                    :
            vs.                     :    (Case Transferred 01/28/04)
                                    :
LOW SECURITY CORRECTIONAL           :    (Judge Muir)
INSTITUTION ALLENWOOD, et al.,:
                                    :
        Defendants                  :

## ORDER

August 24, 2005

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On July 29, 2003, Plaintiff Richard Hartman, an inmate formerly confined at the Low Security Correctional Institution at Allenwood, in White Deer, Pennsylvania (hereinafter at times "Allenwood"), initiated this action by filing a three-count complaint pursuant to, *inter alia*, the United States Supreme Court case of Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).[1]  At all relevant times, Hartman was incarcerated at Allenwood because of charges not related to this action.  The originally named Defendants were Susan Gerlinski, a former warden of Allenwood; former Health

---

[1]The United States Supreme Court held in Bivens that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

Services Administrator Dan DeSantis; Dr. Tawfig Ansari; Nurse Donna Bertone; Nurse Kim Thomas (formerly Kim Herrold); Physician's Assistant Francis Fasciana; Nurse Joan Reaser; Physician's Assistant Jim Reid; Physician's Assistant Regina Henry Ali; Physician's Assistant Charles Craig; Physician's Assistant Edgardo Ong; Evangelical Hospital; Dr. Dennis R. Smith; and Pfizer, Inc.

By order dated May 21, 2004, we granted in part and denied in part a number of motions to dismiss certain claims asserted by Hartman.  As a result of that order, all of the claims against Defendants Ong, Bertone, and Reid were dismissed.  On January 12, 2005, the court entered a stipulation (which had been filed by the parties for court approval) providing that the claims against Pfizer, Inc., be dismissed with prejudice.  By order dated May 27, 2005, Hartman's claims against Dr. Smith and Evangelical Community Hospital were dismissed.  The only remaining claims in this case relate to the actions taken by the employees on the staff of Allenwood.  All of those claims are contained in count 1 of Hartman's complaint.  Those claims have been brought against Defendants Gerlinski, DeSantis, Ansari, Thomas, Fasciana, Reaser, Ali, and Craig.

On June 15, 2005, the remaining Defendants associated with Allenwood filed a motion for summary judgment with respect to Hartman's claims against them.  A brief in support of that motion

2

was filed on June 29, 2004.  Hartman filed an opposition brief on July 18, 2005.  The moving Defendants filed a reply brief on August 1, 2005.  By order dated August 9, 2005, we granted Hartman's motion to file a sur-reply brief.  On August 11, 2005, Hartman timely filed that brief, thereby ripening for disposition the Defendants' motion for summary judgment.

As a threshold matter, we address Hartman's request that we summarily deny the summary judgment motion because of flaws in the brief filed by the Defendants in support of their motion. The defects noted by Hartman are the failure to 1) include a table of contents, 2) include a table of authorities, 3) include a certificate as to number of words in the brief, and 4) file the motion to exceed the page limit in the local rules in a timely manner.[2]  There is no indication that Hartman has been prejudiced by any of the defects in the Defendants' brief.  In addition, none of the defects cited by Hartman has hindered our ability to rule on the pending summary judgment motion.

Hartman's exacting scrutiny is somewhat ironic because he has failed to provide any certificate as to the number of words in his brief, and his brief exceeds the number of pages allowed

---

[2]Hartman also contends that the Defendants' supporting brief was untimely filed.  This argument has no merit because Hartman failed to consider Federal Rule of Civil Procedure 6(a) in computing the deadline for the Defendants' brief.  According to manner in which time is measured in that rule, the Defendants' brief was timely filed.

by our order of July 15, 2005.  Consequently, if we were to apply
rigidly the requirements imposed upon the parties by the local
rules and orders issued in this case we would disregard not only
the Defendants' supporting brief but also Hartman's opposition
brief.  Adopting such a course would unnecessarily delay the
processing of this case.

We choose instead to exercise our discretion, overlook all
of the deficiencies in the parties' briefs, and proceed to
consider the merits of the summary judgment motion. *See* U.S. v.
Eleven Vehicles, Their Equipment and Accessories, 200 F.3d 203,
215 (3d Cir. 2000)(holding that "a district court can depart from
the strictures of its own local procedural rules where (1) it has
a sound rationale for doing so, and (2) so doing does not
unfairly prejudice a party who has relied on the local rule to
his detriment.")

Summary judgment is appropriate only when there is no
genuine issue of material fact which is unresolved and the moving
party is entitled to a judgment as a matter of law. Fed. R. Civ.
P. 56(c).  Summary judgment should not be granted when there is a
disagreement about the facts or the proper inferences which a
fact finder could draw from them. Peterson v. Lehigh Valley Dist.
Council, 676 F.2d 81, 84 (3d Cir. 1982).  "When a motion for
summary judgment is made and supported as provided in ...[Rule
56], an adverse party may not rest upon mere allegations or

denials of the adverse party's pleading...."  Fed. R. Civ. P.
56(e).

Initially, the moving party has a burden of demonstrating
the absence of a genuine issue of material fact. Celotex
Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be
met by the moving party pointing out to the court that there is
an absence of evidence to support an essential element as to
which the non-moving party will bear the burden of proof at
trial. Id. at 325.

Rule 56 provides that, where such a motion is made and
properly supported, the adverse party must show by affidavits,
pleadings, depositions, answers to interrogatories, and
admissions on file that there is a genuine issue for trial. Fed.
R. Civ. P. 56(e). The United States Supreme Court has commented
that this requirement is tantamount to the non-moving party
making a sufficient showing as to the essential elements of his
or her case that a reasonable jury could find in their favor.
Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986).

Because summary judgment is a severe remedy, the Court
should resolve any doubt about the existence of genuine issues of
fact against the moving party. Ness v. Marshall, 660 F.2d 517,
519 (3d Cir. 1981).

The United States Supreme Court has stated that in motions
for summary judgment a material fact is one which might affect

the outcome of the suit under relevant substantive law.  <u>See</u>
Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The
Supreme Court also stated in <u>Anderson</u> that a dispute about a
material fact is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."
<u>Id.</u> at 248.  "Where the record taken as a whole could not lead a
rational trier of fact to find for the non-moving party, there is
no 'genuine issue for trial.'" Matsushita Electric Industrial
Company, Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 587
(1986).

   When addressing such a motion, our inquiry focuses on
"whether <u>the evidence</u> presents a sufficient disagreement to
require submission to the jury or whether it is so one-sided that
one party must prevail as a matter of law." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 251-52 (1986)(emphasis added).

   As summarized by the Advisory Committee On Civil Rules,
"[t]he very mission of the summary judgment procedure is to
pierce the pleadings and to assess the proof in order to see
whether there is a genuine need for trial." Fed. R. Civ. P. 56
advisory committee note to 1963 Amendment.

   We will apply those principles to the pending motion for
summary judgment.  Before discussing the summary judgment
motion's merits, we will set forth the claims alleged against the
moving Defendants.

All of Hartman's claims against the moving Defendants are
based on the alleged violation of his Eighth Amendment rights as
a result of the moving Defendants' failure to provide adequate
medical treatment to Hartman.  In the complaint's so-called
"Preliminary Statement" Hartman declares that the

> [d]efendants include physicians, physician assistants and
> correctional officers who have knowingly engaged in
> deliberate indifference to the plaintiff's serious and life-
> threatening medical condition, pain and suffering, from July
> 29, 2001, to October 15, 2002.

(Complaint, p. 1)  Each of the moving Defendants is identified in
paragraph 3 of the complaint and Hartman describes them as being
"assigned to Allenwood from the time of plaintiff's heart attack
on July 29, 2001 until his release on October 15, 2002." (Id., p.
2, ¶3)  Count 1 of the complaint is the only one directed at the
moving defendants and in it Hartman alleges the following:

> The correctional and medical staff of Allenwood was allowed
> to commit recurrent and ongoing acts of deliberate
> indifference to plaintiff's lack of medical care throughout
> the last fifteen (15) months of his incarceration from
> August, 2001 until October, 2002.

(Id., p. 4, ¶17)

Hartman specifically alleges the following in paragraph 19
of his complaint:

> On or about July 29, 2001 in the very early morning hours,
> the plaintiff suffered his initial myocardial infarction
> (heart attack).  His chest pains were constant and severe
> and he conveyed that to the female correctional officer who
> told him that the institution's health facility was closed
> until 6:00 a.m. and there was nothing that she could do for
> him.  The plaintiff prevailed upon her to convey his
> situation to a superior officer who did ultimately respond

7

to the unit, but again told the plaintiff that there was nothing that could be done because the health facility was closed and they suggested that he take a hot shower and lie down.  They assured him that they would visit his room from time to time to determine if the pain continued to increase. After 6:00am [sic] in the morning, he walked one-half mile to the Health Services [offices] where the P.A. (Physician Assistant) attempted to give the plaintiff [an] EKG, but the machine initially proved to be inoperable.  After about forty-five (45) minutes and several attempts, the physician's assistant agreed that the reading showed that the plaintiff was undergoing a heart attack.  An ambulance was contacted and the plaintiff was taken to the defendant Evangelical Hospital at Lewisburg, Pennsylvania.

(Id., pp. 6-7, ¶19)

The undisputed material facts of record establish that at all relevant times Hartman was incarcerated at the Low Security Institution at Allenwood, Pennsylvania.  While at Allenwood Hartman suffered from various serious physical ailments, including but not limited to high blood pressure, blockage of his coronary arteries, renal conditions, and an abdominal aortic aneurysm.  In the weeks leading up to July 28, 2001, Hartman experienced symptoms consistent with heart disease and indicating that he may suffer a myocardial infarction, or heart attack. Despite the absence of any medical records documenting requests for treatment by Hartman during that period, Hartman insists that he made such requests and that they were ignored by unidentified members of the staff at Allenwood.

During the early morning hours of July 28 or 29, 2001, Hartman experienced severe pain in his chest and upper left arm. At this point we note that Hartman's assertions regarding the

8

date and time of his heart attack have not been consistent.  The
complaint and medical records indicate that Hartman's heart
attack occurred during the early morning hours of July 29, 2001.
In the brief Hartman filed in opposition to the summary judgment
motion, he states that the heart attack occurred "[o]n the
evening of July 28, 2001." (Opposition Brief, p. 6)  In the
affidavit Hartman filed with that brief he states that the heart
attack occurred during "the early hours of July 28, 2001."
(Affidavit, p. 2, ¶5)  We take a dim view of Hartman's failure to
pinpoint such a critical event.  However, for the purposes
discussed below in detail the discrepancy is inconsequential and
the precise date of Hartman's heart attack need not be
determined.

        Although he attempted to obtain emergency medical treatment
through the aid of a corrections officer and her supervisor,
those individuals advised Hartman that nothing could be done for
him until the institution's health facility opened at 6:00 a.m.
The corrections officers who provided that advice are not named
defendants in this case and their advice was contrary to the
institution's policy.

        The policy in place at the relevant time provided that 1)
medical care would be provided "24 hours per day, seven days per
week" and 2) emergency issues arising after normal business hours
would be referred directly to a hospital in the local community

for care to be provided "as soon as possible, once it has been determined that an emergency exists." (Bureau of Prisons Program Statement 6000.05, p. 2)

Hartman appeared at the institution's health facility at 6:00 a.m. on the morning he experienced his severe symptoms. He was given an EKG which revealed that a heart attack had recently occurred. Dr. Toa Chaw evaluated Hartman and determined that Hartman needed to be evaluated at a hospital emergency room. Dr. Chaw is not a defendant in this case. An ambulance was summoned and Hartman was transferred to Evangelical Community Hospital via an Advanced Life Support Unit. The examining physician determined that Hartman should be admitted for medical management because at that point it was too late for any further treatment of the heart attack. Hartman was discharged on August 1, 2001. The discharge instructions stated that Hartman would be able to resume his normal functions.

The medical records submitted by the Defendants in support of their summary judgment motion indicate that Hartman received substantial treatment for all of his ailments after his heart attack. All of the moving Defendants who personally treated Hartman first did so after he returned to Allenwood on August 1, 2001. Hartman concedes that he received medical treatment from those Defendants "'almost every day' AFTER he had sustained a severe myocardial infarction ...." (Opposition Brief, p.

29)(Emphasis in original)

On July 29, 2003, Hartman, who at all times has been represented by counsel, filed the complaint in this case in the United States District Court for the Southern District of New York.[3]  The case was subsequently transferred to this court.

Based on the above procedural and historical facts, the moving Defendants first contend that they are entitled to summary judgment as to all of the claims in the complaint because they are entitled to qualified immunity.  In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court held

> that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).

The initial factor in a qualified immunity inquiry is whether the plaintiff has alleged "the violation of a clearly established constitutional right." Siegart v. Gilley, 500 U.S. 226, 231 (1991); Sherwood, 113 F.3d at 399; In re City of Philadelphia Litig., 49 F.3d 945, 960 (3d Cir.), cert. denied sub

---

[3]For some reason unknown to us, the parties have asserted that the complaint was filed on July 28, 2001.  The date-stamped copy of the complaint we received in the file from the United States District Court for the Southern District of New York bears a filing date of July 29, 2001.

nom., City of Philadelphia v. Africa, 516 U.S. 863, 116 S. Ct.
176 (1995); Turiano v. Schnarrs, 904 F. Supp. 400, 413 (M.D. Pa.
1995).

In considering whether any or all of the Defendants are
entitled to qualified immunity we will organize Hartman's causes
of action into the following three distinct time periods: 1)
claims based on actions taken by any Defendant before Hartman's
heart attack; 2) claims based on actions taken by any Defendant
on the date of his heart attack; and 3) claims based on actions
taken by any Defendant after the date of his heart attack.
Structuring our consideration of Hartman's claims in that manner
is advisable for the following reason: although the complaint
clearly focuses on events which occurred "from August, 2001 until
October, 2002," in the briefs he filed in connection with the
summary judgment motion Hartman completely eschews reliance on
that period and instead highlights events which occurred in the
weeks and days preceding his heart attack.

The first period to consider predates Hartman's myocardial
infarction, which occurred on either July 28, 2001, or July 29,
2001.  The moving Defendants assert that their actions in that
period are not relevant because any attempt by Hartman to base a
claim thereon is barred by the applicable two-year statute of
limitations. *See* Napier v. Thirty or more Unidentified Federal
Agents, 855 F.2d 1080, 1087-1088 (3d Cir. 1988).  The Defendants

are clearly correct.  Hartman's complaint was filed on July 29, 2003.  Hartman admits that a two-year statute of limitations applies to all of his claims in this case. (Sur-reply Brief, p. 3)  With respect to the claims that are based on events pre-dating July 29, 2001, we need not consider whether any Defendant is entitled to qualified immunity because the statute of limitations bars Hartman from pursuing those claims.  The Defendants are entitled to summary judgment as to all such claims based on the applicable statute of limitations.

At this point we note that if Hartman stands by his assertion that his heart attack occurred on July 28, 2001, then any claim based on events which occurred on that date are also barred by the statute of limitations.  However, out of an abundance of cation, we will proceed as though Hartman's heart attack occurred on July 29, 2001, so that any resulting claim would not be time-barred.

The next period to consider is the date on which Hartman suffered his heart attack, which at this point we consider to be July 29, 2001.  It is crucial to note that Hartman has never identified the two individuals responsible for delaying his medical treatment when he first reported his symptoms and they are not defendants in this case.  Based on the evidentiary record submitted to us, there is no indication that any named Defendant participated in the events which arose on the date that Hartman

13

suffered his heart attack.  Consequently, Hartman has failed to establish a legitimate basis to hold any of the named Defendants responsible for either the conduct of the two unidentified individuals or the harm resulting to Hartman because of that conduct.

Hartman attempts to hold Warden Gerlinski and former Health Services Administrator Dan DeSantis responsible because of the policies that had been in place on the date of his heart attack. This argument is unpersuasive because the policy in effect provided for the prompt provision of emergency care at all times. The evidence of record demonstrates that Hartman's situation on the morning of his heart attack stemmed not from an inadequate policy, but from the failure of the two unnamed individuals to follow the policy.

The Defendants are entitled to qualified immunity, and therefore summary judgment, as to any claim based on events that occurred on the date of Hartman's heart attack because Hartman has failed to show how any named Defendant was deliberately indifferent to any serious medical need on that date.  In other words, Hartman has failed to establish that a named Defendant violated any of Hartman's clearly defined constitutional rights on the date of his heart attack.

The third and final period to consider is that which post-dates Hartman's heart attack.  In his sur-reply brief Hartman

states that

> Defendants' Brief outlines the medical records from July 29,
> 2001 onward, at which point the medical staff and
> correctional officers [had] already [been] deliberately
> indifferent to Mr. Hartman and Mr. Hartman already suffered
> a myocardial infarction.  Indeed, the description of medical
> case rendered to Plaintiff Richard Hartman as set forth in
> defendants' Brief essentially begins its detailed chronology
> at a point AFTER plaintiff had sustained a preventable
> severe myocardial infarction.

(Opposition Brief, pp. 28-29)  Hartman also states in his

affidavit that

> [t]he gravamen of my claims herein against defendants is
> with reference to the deprivation of requisite emergency
> medical treatment required to prevent my heart attack, a
> deprivation which occurred exclusively due to the deliberate
> indifference of defendants ....  In that defendants seek to
> distract the court from the issues at bar by efforts to
> present to the court "facts and circumstances" that post
> date the focus of the issues herein, it is respectfully
> submitted that defendants' motion is essentially
> inappositive [sic], and must be denied ....

((Affidavit, pp. 11-12, ¶11) states

      To the extent that Hartman considers all of the facts post-

dating his heart attack as a "distraction," it appears as though

he has abandoned all claims based on those facts and the

defendants are entitled to summary judgment on that basis.

However, since the circumstances that occurred after his heart

attack are the primary, if not exclusive, basis of the

allegations and claims stated in the complaint, we will consider

them more thoroughly.

      The Defendants attach as exhibits to their summary judgment

brief literally hundreds of pages of medical records from

Hartman's file which were generated after the date of his heart attack.  As noted above, those records demonstrate that Hartman received medical treatment almost daily from the Defendants for his various ailments.  The undisputed material facts established by those records entitle the defendants to qualified immunity, and therefore summary judgment, as to any claim based on events that occurred after the date of Hartman's heart attack.  Hartman has failed to establish that a named Defendant violated any of Hartman's clearly defined constitutional rights during that period.

The Defendants are entitled to summary judgment on all of the claims in Hartman's complaint.  We will grant their motion for that relief.

AND NOW, IT IS HEREBY ORDERED THAT:

1.   The Defendants' motion for summary judgment (Document 64) is granted.

2.   The Clerk of Court shall enter judgment in favor of the moving Defendants as to the claims in count 1 of Hartman's complaint.

3.   The Clerk of Court shall close this case.


s/Malcolm Muir
MUIR, U. S. District Judge

MM:ga